**ERIE INSURANCE PROPERTY & CASUALTY COMPANY,**
Petitioner,

v.

**Halford T. JOHNSON, d/b/a Dual Air Refrigeration, et al., Respondents.**

No. 6:09–cv–01532.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Dec. 21, 2010.

Michael L. Powell, James D. Lamp, Julie A. Warren, Matthew J. Perry, Lamp O'Dell Bartram Levy & Trautwein, Huntington, WV, for Petitioner.

Charles M. Johnstone, II, Johnstone Gabhart & Prim, Charleston, WV, George E. Lantz, Parkersburg, WV, for Respondents Halford T. Johnson and Karen Johnson.

Robert P. Lorea, Benjamin L. Bailey, Bailey & Glasser, Charleston, WV, for Respondents Andrew Buckley, V.D.B. and J.M.B.

## MEMORANDUM ORDER AND OPINION

MARY E. STANLEY, United States Magistrate Judge.

The Court has reviewed the Respondents' Motion to Compel [Docket 32 & 33]. In this motion, Respondents Andrew Buckley, Rejena D.S. Buckley, V.D.B., and J.M.B. ("the Buckleys") request that the undersigned compel Petitioner Erie Insurance property and Casualty Company ("Erie") to provide full and complete responses to their Interrogatories and Requests for Production, and to deem certain Requests for Admission be admitted. After careful consideration and for good cause shown, the Court orders that the Buckleys' motion be granted except as to Request for Admission No. 52.

### I. BACKGROUND

This civil action arises from a two car vehicle accident that occurred on January 8, 2009, between a Chevrolet Blazer driven by Ms. Karen Johnson and a Subaru Outback driven by Ms. Rejena Buckley, with Mr. Andrew Buckley riding as a passenger. The Blazer was owned by and registered to Dual Air Refrigeration ("DAR"), a commercial heating and cooling business operated by Ms. Johnson's husband, Mr. Halford "Troy" Johnson. The Buckleys' Outback was totaled, and Mr. Buckley suffered severe spinal injuries. Law enforcement apparently determined that Ms. Johnson was at fault in the accident.

Ms. Johnson testified at deposition that she used the Blazer in the scope of her employment with DAR, and that she was driving the Blazer in the course of her employment at the time of the accident. Mr. Johnson had three Erie—issued insurance policies—a commercial auto policy, a family auto policy, and contractors' policy—at the time of the accident, which he purchased from Morris & Associates, LLC, an authorized Erie agent.

As a result of injuries arising from the accident, on August 12, 2009, the Buckleys filed suit (the "underlying state action") in the Circuit Court of Wood County, West Virginia against Ms. Johnson and Mr. Johnson, doing business as DAR. On December 22, 2009, Erie then filed the instant declaratory judgment action, seeking a declaration that the Blazer and Ms. Johnson were not covered under the commercial auto policy. Initially, Erie only admitted the existence of the family policy. It verified the existence of the commercial auto policy on January 26, 2010, only pursuant to a subpoena issued by the Circuit Court of Wood County. The Buckleys were still uninformed about the existence of the contractors' policy until February 17, 2010, when Mr. Johnson discussed that policy at his deposition. The Buckleys counterclaimed against Erie in the instant case, seeking declaratory relief that the commercial auto policy covered Ms. Johnson and the Blazer in the accident (Count I) and that Mr. Johnson had a reasonable expectation of coverage for the Chevrolet Blazer under the commercial policy (Count II).[1] Erie eventually agreed to settle with the Johnsons, moving to dismiss this action on November 4, 2010, on the grounds that it had agreed to extend insurance coverage to Ms. Johnson under the commercial auto policy issued to Mr. Johnson. (# 38).

The Buckleys filed the instant motion to compel on October 25, 2010, taking issue with Erie's responses to their interrogatories, requests for production, and certain requests for admission. The discovery at issue in the instant motion was served on Erie on July 21, 2010. On August 6, 2010, Erie claimed that it never received these requests. The Buckleys then provided a second copy of the requests to Erie, and they voluntarily extended Erie's deadline to respond twice, first granting a new deadline of September 3, 2010, and then later extending that deadline to September 24, 2010. However, while Erie's responses to the Buckleys' requests for admission were served timely, the responses to their interrogatories and requests for production were not so served. On Octo-

---

1. Count III, a negligence claim, was dismissed on June 7, 2010.

ber 5, 2010, Erie filed a Certificate of Service stating that those responses were served that day either by United States mail or the Court's electronic CM/ECF system. As it turns out, the responses, which included a number of objections, were served by regular mail, and they were received by the Buckleys on October 8, 2010.

On November 19, 2010, the Buckleys moved to amend their counterclaim, seeking to add six additional counts against Erie, and a cross-claim against the Johnsons. (# 54). Erie contested this motion, arguing that all of the counts, except Count II—which seeks declaratory judgment regarding the policy limits of the commercial auto policy—should not be allowed. (# 57). On December 7, 2010, the Buckleys apparently won a $1.68 million verdict against the Johnsons in the underlying state action. On December 20, 2010, Chief Judge Goodwin granted the Buckleys' motion for leave to amend, instructing the parties to respond within 14 days of service of the amended pleading if they want to challenges any of the claims in the amended counterclaim. (# 59).

## II. ARGUMENTS OF THE PARTIES

The Buckleys make several arguments with regards to Erie's responses to their interrogatories and requests for production, though the undersigned needs only to consider their first argument. They argue that, pursuant to Fed.R.Civ.P. 33(b)(4) and L.R. Civ. P. 37.1, Erie has waived its objections due to the untimely nature of its responses. The Buckleys also argue that Erie's responses to their interrogatories and requests for production are inappropriate and often lack substance.

The Buckleys further argue that many of Erie's responses to their requests for admission fail to comply with the requirements of Fed.R.Civ.P. 36. In particular, they take issue with Erie's objections and/or responses to Request Nos. 22, 23, 24, 25, 26, 49, and 52.

Request No. 22 asked Erie to "[a]dmit that Erie provided Regina Morris with the 'Erieplaceable Business Insurance Sales Manual.'" Erie objected, stating that "[t]his request seeks information which is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Erie does not possess sufficient information to either admit or deny this request." (# 32–6 at 6). The Buckleys argue that "[w]hether or not Erie provided the contracting agent, Regina Morris, with the manual that explains among other things how the insurance application is to be completed and how the policy is intended to operate is clearly discoverable," (# 33 at 24), and that it is also reasonable to assume that Erie would know what materials were provided to its agent. According to the Buckleys, in order for Erie to claim that it lacks sufficient information, Rule 36 requires that it recite in detail the efforts it made to investigate the issue. See Frontier–Kemper Constructors, Inc. v. Elk Run Coal Company, Inc., 246 F.R.D. 522, 529 (S.D.W.Va. 2007).

The Buckleys further argue that Erie failed to provide a conforming response to Request No. 23. That item requested that Erie "[a]dmit that Erie required Regina Morris to comply with the instructions contained in the 'Erieplaceable Business Insurance Sales Manual;'" Erie objected, stating that the request "seeks information which is not reasonably calculated to lead to the discovery of admissible evidence." (# 32–6 at 6). The Buckleys repeat their argument that Erie's instructions and advice to its agents are relevant to this case.

Request Nos. 24–26 read:

Request No. 24: Admit that Erie required the Chevrolet Blazer to either be identified as an owned vehicle under the Commercial Auto Policy, or alternatively to be identified as an auto to be expressly excluded under the Commercial Auto Policy.

Request No. 25: Admit that the failure to either identify the Chevrolet Blazer as an owned vehicle under the Commercial Auto Policy, or in the alternative, as an auto to be expressly excluded under the Commercial Auto Policy was a breach of Erie's business procedures.

Request No. 26: Admit that the failure to either identify the Chevrolet Blazer as an owned vehicle under the Commercial Auto Policy, or in the alternative, as an auto to

be expressly excluded under the Commercial Auto Policy, was due to an error or omission by Erie or its agent.

(# 33 at 25). In response to each of these, Erie objected on the grounds that they seek information that is not reasonably calculated to lead to the discovery of admissible evidence. However, the Buckleys argue that each request is relevant to potential negligence in underwriting the commercial auto policy.

Request No. 49 asked Erie to "[a]dmit that the Chevrolet Blazer involved in the January 8, 2009 accident was connected to Halford T. Johnson's business;" Erie responded that it could "neither admit or deny this request at this time. Halford Johnson represented to Erie that the vehicle was not used in his business but has argued otherwise since the motor vehicle accident at issue." (# 32–6 at 13). The Buckleys argue that Erie should be required to respond, as "Erie purports that it cannot admit or deny the request, but then conversely argues reasons why the Blazer was not connected to the business." (# 33 at 26).

Finally, Request No. 52 asked Erie to "[a]dmit that your insureds liability for the January 8, 2009 [accident] is reasonably certain to Erie." *Id.* Erie objected that

> [t]his request is vague in the use of the terms "insureds" as more than one insured is involved through separate allegations and theories of liability. Erie further objections [*sic*] to this request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Given the literal meaning of insureds' as inclusive of all such insureds, this request is denied.

*Id.* The Buckleys argue that if Erie will not admit this request, then it should be compelled to provide full and complete responses to the corresponding interrogatories and requests for production.

In response to the Buckleys' motion, Erie asserts that it has been mooted by its settlement with Ms. Johnson. According to Erie,

the Buckleys' counterclaims only concern the extension of the commercial auto policy to Ms. Johnson, which Erie agreed to in its settlement. It then summarily claims that its answers and objections to the Buckleys' interrogatories and requests for production are responsive and compliant with the Federal Rules of Civil Procedure.

Erie further posits that its response to the Buckleys' requests for admission were timely served,[2] and also contends that its responses were substantively appropriate as well. It states that it complied with the requirements of Rule 36(a)(4) & (5). With regards to its response to Request No. 22, it argues it complied with Rule 36(a)(4) because it "does not simply plead lack of knowledge, but expressly states that it does not 'possess sufficient information to either admit or deny this request.'" (# 40 at 4). As to Requests No. 23 through 26, Erie reiterates that argument that the settlement has mooted these issues, and that its responses also comply with Rule 36(5), as it did not object solely on the ground that the requests present genuine issues for trial. Regarding Request No. 49, Erie argues that it provided an appropriate justification, and that the Buckleys inappropriately cite to *Elk Run Coal Co., Inc.,* as the Court was dealing with interrogatories pursuant to Rule 33 in that instance. Erie also argues that its response to Request No. 52 is sufficient, as "not only are Erie's objections appropriate due to the poor wording of the request and the fact that the requested information is irrelevant, but Erie also expressly denied the request despite such poor wording by the Buckleys." (# 40 at 5).

The Buckleys disagree with the objections made by Erie in its response. They argue that this declaratory judgment action is not moot, as Erie continues to construe the policy in a manner that denies them compensation. The Buckleys claim that at a November 8, 2010, mediation, Erie informed them that Rejena Buckley's bodily injuries were derivative of Andrew Buckley's, and therefore limited by his per person limits. They accordingly argue that

---

**2.** It apparently does not contest the tardiness of its responses to the Buckleys' interrogatories and requests for production.

Erie's argument to limit damages presents a strained position that Respondents should be allowed to explore through discovery in this case. Although the precise issue now relied upon by Erie was not disclosed to Respondents until during the mediation, the discovery Respondents sought in advance would shed light on Erie's argument and could lead to admissible evidence to counter it. In fact, the timing of Erie's confidential settlement suggests that Erie's motivation for resisting the discovery in this case was motivated at least in part, to enhance Erie's argument to limit the coverage under the Commercial Policy by half. Erie should not be allowed to deny the Respondents compensation by a strategy that included salting away its arguments, refusing to participate in discovery, and then entering into a secret settlement agreement with its insureds in order to circumvent any adverse ruling from this Court.

(# 47 at 2).

The Buckleys further assert that discovery is warranted to address Erie's conduct, as they "have a good faith belief that the discovery they seek will not only produce evidence supporting [their] arguments as to how the policy should be applied in this case, but will also shed light on misconduct on behalf of Erie." (# 47 at 3). They suspect that Erie timed its settlement with the Johnsons "merely to circumvent this Court's jurisdiction over its conduct," *id.*, and noted their intent to file an amended counterclaim as first party claimants under the medical payments provisions of the commercial auto policy, to seek relief under the West Virginia Unfair Trade Practices Act, W. Va.Code § 33–11–1 *et seq.*, to bring a common law first-party bad faith action, and possibly an action for abuse of process arising under common law. They state the discovery is also needed to provide factual support for these claims.

Erie timely moved to file a surreply, which the undersigned granted. (# 46 & 49). It claims that the Buckleys have incorrectly portrayed Erie in a bad light. It notes that no coverage issues have been raised in this case other than the applicability of the commercial auto policy to Ms. Johnson and the Blazer. Erie also argues that the Buckleys have misrepresented that Erie refused to offer monies to Rejena Buckley outside of Andrew Buckley's limits, as it has offered her $30,000 separate from Andrew Buckley's limits for her bodily injuries; according to Erie, only the derivative claims of Rejena Buckley, V.D.B., and J.M.B. are subject to Andrew Buckley's limits. It also notes that the Buckleys should be required to amend their pleadings if they are going to assert that they are first party claimants. It concludes that the Buckleys should be required to amend their pleadings to specifically set forth their new claims.

## III. APPLICABLE LAW

### A. The Buckleys' Interrogatories and Requests for Production

Fed.R.Civ.P. 33(b)(4) provides that objections to interrogatories are waived if they are not timely asserted. "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Moreover, Local Rule of Civil Procedure 37.1 additionally provides that "objections to disclosures or discovery that are not filed within the response time allowed by the Federal Rules of Civil Procedure, the scheduling order(s), or stipulation of the parties pursuant to Fed.R.Civ.P. 29, whichever governs, are waived unless otherwise ordered for good cause shown." *Accord Elk Run Coal Co., Inc.*, 246 F.R.D. at 526. In determining the question of good cause, the Court

> should look into the circumstances behind the failure to object [or in this case, timely respond], whether it was inadvertent, defiant, or part of a larger calculated strategy of noncompliance. The Court may also look at subsequent actions by the party to ascertain whether it was acting in good faith, as opposed to acting in a disinterested, obstructionist or bad faith manner. The court should always take into account any resulting prejudice or lack thereof, and the need to preserve the integrity of the rules by serving as a warning to other litigants. Finally, the Court may assess

lesser sanctions should that be more appropriate.

*Id.* (quoting *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.,* 200 F.R.D. 255, 259 (M.D.N.C.2001)).

## B. The Buckleys' Requests for Admission

Rule 36(a) applies to the dispute over the Buckleys' Requests for Admission. In relevant part, it provides that

(4) Answer. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

(5) Objections. The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.

(6) Motion. Regarding the Sufficiency of an Answer or Objection. The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served. The court may defer its final decision until a pretrial conference or a specified time before trial. Rule 37(a)(5) applies to an award of expenses.

"Rule 36(a)'s primary purposes are 'to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.'" *Elk Run Coal Co., Inc.,* 246 F.R.D. at 531. (internal citations omitted). *See also United Coal Companies v. Powell Const. Co.,* 839 F.2d 958, 967 (3d Cir.1988) (stating that "[t]he purpose of Rule 36(a) is

to narrow the issues for trial to those which are genuinely contested"); *Harris v. Koenig,* 271 F.R.D. 356, 372 (D.D.C.2010) (stating that "[r]equests for admissions are not a discovery device. The purpose of requests for admissions is to narrow the scope of issues to be litigated and to thereby expedite the litigation process.") (internal citations and quotations omitted); *Amergen Energy Co., LLC ex rel. Exelon Generation Co., LLC v. United States,* 94 Fed.Cl. 413, 416 (Fed.Cl. 2010) (stating that "the purpose of requests for admission is to eliminate issues over facts that are not in dispute, and to narrow issues to be tried before the court. . . . [R]equests for admission are not designed to obtain discovery of the existence of facts, but rather are intended to establish the admission of facts about which there is no real dispute.") (internal citations and quotations omitted). Therefore, requests for admission differ from interrogatories, as the latter are intended to "to obtain simple facts, to narrow the issues by securing admissions from the other party, and to obtain information needed in order to make use of the other discovery procedures . . . . Interrogatories can be a simple mode of obtaining the names and addresses of persons having knowledge of pertinent facts, or of securing information about the existence of documentary evidence[.]" Wright, Miller, & Marcus, Federal Practice & Procedure: Civil 3d § 2163. See also 23 Am.Jur.2d Depositions and Discovery § 117 (stating that a party serves interrogatories for the purpose of "ascertaining facts and procuring evidence or securing information as to where pertinent evidence exists.").

 While, unlike an interrogatory, a request for admission is not a discovery device, a party's duty of reasonable inquiry in responding to requests for admissions is similar to its duty in answering interrogatories. *F.D.I.C. v. Halpern,* 271 F.R.D. 191, 193 (D.Nev.2010). Therefore,

Rule 36 requires the responding party to make a reasonable inquiry, a reasonable effort, to secure information that is readily obtainable from persons and documents within the responding party's relative control and to state fully those efforts. Such reasonable inquiry includes an investiga-

tion and inquiry of employees, agents, and others, "who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response." The inquiry may require venturing beyond the parties to the litigation and include, under certain limited circumstances, non-parties.... The operative words then are "reasonable" and "due diligence."

*Id.* (quoting *Asea, Inc. v. Southern Pacific Transp. Co.,* 669 F.2d 1242, 1245 (9th Cir. 1981).)

## IV. DISCUSSION

### A. The Buckleys' Interrogatories and Requests for Production

■ The undersigned agrees with the Buckleys, and finds that Erie has waived any and all objections to the former's interrogatories and requests for production. Given this finding, the Court need not address the Buckleys' substantive arguments as to Erie's responses and objections. Even after being given two extensions by the Buckleys, Erie still disregarded the deadline of September 24, 2010, by filing a certificate of service dated October 5, 2010. This suggests purposeful delay. Erie apparently does not contest that it has waived its objections, as it did not address this issue at all in its response. Accordingly, the undersigned finds that no good cause exists to excuse Erie's failure to timely object, and that Erie's objections are therefore waived. Erie's mootness argument is also without merit. Chief Judge Goodwin has granted the Buckleys' motion for leave to amend as to all counts. Moreover, while Erie may chose to contest the amended counterclaim, it has previously admitted that it does not object to Count II, which seeks declaratory judgment regarding the policy limits of the commercial auto policy. As Erie opposed the Buckleys' motion partially on the grounds that they would need to amend their counterclaim in order to seek discovery on these matters, it cannot now oppose discovery given that its demand has been met.

The undersigned orders Erie to completely and fully respond to the Buckleys' Interrogatories and Requests for Production, in compliance with the applicable Rules and without interposition of objections, no later than the close of business on December 30, 2010. The responses are to be served either electronically or by overnight delivery; slower service by first class mail will not be allowed at this late date.

### B. The Buckley's Requests for Admission

The undersigned finds Erie's objections to the Buckleys' requests for admission largely fail to meet the requirements of Rule 36.

■ First, Erie's objections to Request Nos. 22–26 are wholly inappropriate on the basis that they misconstrue the purpose of Rule 36(a); all four objections argue that these requests seek information which is not reasonably calculated to lead to the discovery of admissible evidence. As noted above, requests for admission are intended to narrow the scope of issues for trial, not to lead to the discovery of admissible evidence. Moreover, Erie's objection to Request No. 22 is further flawed in that it claims that it does not possess sufficient information to either admit or deny this request. As Regina Morris is Erie's own contracting agent, Erie's claim that it does not possess sufficient information on what it provided her is highly questionable; Erie has failed to meet Rule 36(a)'s requirement that it make reasonable inquiry and effort into its response. *Halpern, supra.* Additionally, Erie's argument that it did not simply plead lack of knowledge in its responses is sophistry. Therefore, the Court deems Request Nos. 22–26 admitted. As noted above, Erie's mootness argument is unfounded following Chief Judge Goodwin's ruling of December 20, 2010.

The Court also finds that Erie's objection to Request No. 49 is also inappropriate. A reasonable inquiry and effort into responding to this request—which involves its insured, Mr. Halford Johnson—would have allowed Erie to admit or deny it. Therefore, the court orders Erie to re-respond to Request No. 49 no later than the close of business on December 30, 2010. Once again, this response to be served either electronically or by express delivery, and Erie must comply with the applicable Rules and without interposition of objections.

■ However, the Court finds that Erie's objection to Request No. 52 largely conforms to the requirements of Rule 36(a). While, as noted above, its claims that the request is not reasonably calculated to lead to the discovery of admissible evidence is misplaced, Erie's argument that the request is vague in its use of the term "insureds" is appropriate. Moreover, the Buckleys' concerns about this objection also appear to be met in that the undersigned is granting this motion as to their interrogatories and requests for production.

## V. CONCLUSION

For the reasons stated above, the Court **ORDERS** the Buckleys' Motion to Compel [Docket 32] **GRANTED** except as to Request for Admission No. 52.

Pursuant to Rule 37(a)(5)(A), Federal Rules of Civil Procedure, the Buckleys may file an affidavit of their reasonable expenses incurred in making the motion, including attorney's fees. Erie shall file its response to the affidavit within one week, including a statement identifying the attorney or the party whose conduct necessitated the motion.

The court **DIRECTS** the clerk to send a copy of this Order to counsel of record.